MILES F. BIXLER COMPANY, Appellant, v. W. G. ARGYROS, Appellee.

NOVEMBER 13, 1928.

*P. E. Ritz*, for appellant.

*M. J. Butterfield*, for appellee.

ALBERT, J.—On the 20th day of January, 1926, plaintiff

and defendant entered into a written contract for the sale of certain jewelry and a show case for the exhibition of the same. The goods were shipped, as per order, by express, and refused by the defendant on the sole ground that he had sold his business, and had no use for the goods. To prevent the sale of the merchandise by the transportation company, the plaintiff paid the express charges, and held the goods subject to the order of the defendant.

The defense was that the signature to the order was procured by false and fraudulent representations. By way of reply to the defense of false and fraudulent representations in securing the contract, plaintiff claims that defendant had every opportunity to read the contract before signing the same, and that, if the contract was other or different from what was orally agreed between them, defendant was negligent in not reading the same, and therefore is precluded from asserting that the contract was other and different from the writing.

It is a settled rule in this state that, if the means of knowledge of the alleged fraud were equally open to both parties, the law will not interfere to protect one who is negligent. *Bell. v. Byerson & Barlow*, 11 Iowa 233; *McCormack v. Molburg*, 43 Iowa 561; *Reid, Murdock & Co. v. Bradley*, 105 Iowa 220.

It is another well settled rule that, where one signs a written contract, and the other party does not use any artifice to prevent the signer from reading the contract, where such signer can read the English language, and signs without reading the contract, he cannot avail himself of false representations made by the other party prior to entering into the contract. In *Bonnot Co. v. Newman Bros.*, 108 Iowa 158, we said:

"While persons, on the faith of another's word alone, every day sign contracts without reading them, the law has ever adjudged this such indifference as will preclude a remedy in event of deception. This is on the ground that, having the full means of knowledge and of determination, they nevertheless rely upon the representations of another, having no better facilities for knowing, without themselves exercising the means open for ascertaining the truth."

In *Bannister v. McIntire*, 112 Iowa 600, we said:

"Nothing was done to prevent McIntire from reading the

paper he signed. If he chose to rely on the statement of plaintiff's attorney as to its effect, which statement seems to have been made in good faith, the wrong, if he suffers any, is due to his own folly."

In *Lillie v. Shriver*, 190 Iowa 861, we stated the rule to be:

"It is elementary law that, though there be a fraud committed in obtaining a signature, the perpetrator of the fraud may still urge that nothing prevented the party from reading before signing, and that, therefore, he may have no relief, even though there were false representations as to the contents of the paper [citing a number of our cases supporting this doctrine]."

One cannot defend on the ground of false and fraudulent representations in the procurement of his signature to a contract where he is able to read, and signs without reading, and the other party does nothing to prevent his reading the same. According to the evidence in this case, the defendant testified:

"He [the agent of the plaintiff who procured the signature] just stood around, and, in order to get rid of him, I consented. He said, 'What shall I send?' and I told him to send anything he wanted. I didn't pay any attention to him at all; so I signed it, and he got out."

On cross-examination, he said that Ede, the agent of the plaintiff, was a total stranger to him, and that he signed the paper without ever reading it. He further testified:

"He [plaintiff's agent] had his arm over it, as I was working back and forth, all morning. I signed the paper on the show case, the cigar case. I signed it to get rid of him. The cigar case is in the front of the store, near a window."

The defendant demonstrated his ability to read the English language by reading the contract in court. He says, with reference to Ede's having his arm on the paper:

"I don't think he was trying to keep me from seeing it. I never thought he was trying to cover up anything. I was busy shining shoes, when I signed the paper. I didn't ask Ede to raise his arm and let me see the paper. I didn't ask him to read it."

1084

Applying the rules above stated to the instant case, it is quite apparent that this defendant, under his own testimony, was negligent in not reading the contract at the time he signed the same, and through such negligence he is precluded from defending on the ground of false and fraudulent representations claimed to have been made to him prior to the signing of the contract. On this testimony, the court should not have allowed the case to go to the jury.—*Reversed.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.