THE Q. R. S. COMPANY, Appellant, *v.* PHILLIPS-JONES CORPORATION, Respondent.

First Department, December 3, 1920.

Contracts — agreement by defendant to grant easement permitting plaintiff to connect with and use its railroad siding — time of completing construction not essence of contract — tender not required where contract repudiated — contract executed by defendant only — part performance by plaintiff — right of plaintiff to restrain defendant from interfering.

The plaintiff and the defendant entered into an agreement which recited among other things that the plaintiff intended to purchase premises adjoining those of the defendant and the defendant agreed to grant the plaintiff an easement to use its railroad siding and to permit the plaintiff to make connection therewith for the benefit of said premises. The agreement, which was executed by the defendant only, was in the form of the grant of an easement and provided that the easement was subject to the conditions that the plaintiff should comply with the contract between the railroad company and the defendant; that the defendant should have the consent of the railroad company; that the plaintiff would indemnify the defendant for all loss or damage by reason of any act on its part; that the plaintiff should secure all necessary permits for the extension of said siding and that the plaintiff should pay to the defendant $100 per month in advance during the period of the easement. The agreement provided also for the right to use said siding and the constructing and maintaining of the connections thereto upon the defendant's premises " for a period of ten years from the completion of the construction of the extension of said siding, which date of completion shall be not more than six months from the date hereof." In an action to restrain the defendant from interfering with the plaintiff in the construction of said siding and making the con-

nection with the plaintiff's premises it appeared that the defendant had full knowledge of the purpose of the plaintiff to purchase the premises and construct the building which it did construct, in reliance upon its right to the use of said siding and in reliance on said agreement did expend $670,000; that the plaintiff, in good faith, proceeded to obtain the necessary consents and permits and that the delay in issuing the permits till after the expiration of six months was due to the failure of the municipal authorities to act promptly; and that prior to the expiration of said time the plaintiff sought an extension of time from the defendant, which was refused.

*Held,* that time was not of the essence of the contract, and no proof was made or attempted to be made that the delay in construction beyond the six months prejudiced the defendant. The time limit was apparently to fix the date when the rent should commence, and construction might be delayed beyond the six months without a forfeiture of the plaintiff's right under the contract.

The tender by the plaintiff of one month's rent after the expiration of the time limit was not an improper tender since no tender was necessary because of the positive refusal of the defendant to proceed with the contract and allow plaintiff to enter its land and complete the construction provided for in the contract.

The objection of the defendant that the plaintiff is not entitled to judgment because such a judgment is in the nature of a judgment for specific performance which will not be granted unless the obligations in the contract are mutual, is without merit, for the plaintiff having partly performed its part of the agreement and having expended a large amount of money upon the faith of the defendant's obligation under the contract, it would be a distinct fraud upon the plaintiff to refuse to allow it the benefit of the easement and to refuse to the plaintiff the injunction of the court against the defendant from interfering with the plaintiff's right to avail itself of the easement thus given.

Appeal by the plaintiff, The Q. R. S. Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Bronx on the 6th day of August, 1920, upon the decision of the court rendered after a trial at the Bronx Special Term dismissing the complaint upon the merits.

*I. L. Broadwin,* attorney [*Frank H. Richmond* with him on the brief], for the appellant.

*Benjamin Reass* of counsel [*Hugo Hirsh* and *Emanuel Newman* with him on the brief], *Hirsh, Newman & Reass,* attorneys, for the respondent.

Smith, J.:

From the findings of the court it appears that the defendant was the owner of certain property bounded on the west by the New York Connecting Railway Company, on the north by East One Hundred and Thirty-fifth street, on the east by Walnut avenue and on the south by East One Hundred and Thirty-fourth street. On its property the defendant owns and has in operation a railroad siding running into and joining with a spur track of the New York, New Haven and Hartford Railroad Company. This spur track is located on the westerly side of the defendant's premises. The plaintiff was engaged in the manufacture and distribution of music rolls and was desirous of securing a site with a railroad siding which was required by the plaintiff in the proper conduct of its business. Just east of the plaintiff's premises were premises which the plaintiff desired to purchase and it was contemplated that the plaintiff could secure an extension of this siding which ran on to the defendant's premises across Walnut avenue upon the premises which the plaintiff desired to purchase. Thereupon negotiations were had between the plaintiff and defendant which resulted in an agreement wherein it is recited, that the plaintiff intended to purchase the premises to the east and that the grantor has agreed to grant it an easement to use its said siding for the benefit of the said premises which the grantee intended to purchase upon terms thereafter stated in the agreement. Among other terms, it was recited that the plaintiff was to secure all necessary consents for the extension of said siding across Walnut avenue to said premises. The agreement then provided for the right to use said siding and the constructing and maintaining of the connections thereto upon the defendant's premises " for a period of ten years from the completion of the construction of the extension of said siding, which date of completion shall be not more than six months from the date hereof." The date of this agreement was September 10, 1919. The plaintiff's covenant in said agreement was to pay in consideration of this right: " $100 per month on the first day of each month, in advance, during said period of ten years, and an additional sum of $5 per car for each car passing over said siding in excess of 240 cars per year. Said additional payments shall be due at the end of each month.

after the number of 240 cars has been exceeded." The agreement was in the form of a grant of an easement, and the agreement provided that the easement was subject to six conditions:

*First.* That the plaintiff should comply with the terms of the contract between the railroad company and the defendant.

*Second.* That the grantor should have the consent of the railroad company.

*Third.* That the grantee should, at its expense, obtain all necessary permits and authorizations for the extension of said siding and in constructing the same should comply with all laws, orders and regulations of all public authorities.

*Fourth.* That the grantee should indemnify the grantor from all loss, damage or expense arising from any act or negligence on the part of the defendant.

*Fifth.* That the grantee should pay the sum of $100 per month, on the first day of each month, in advance, during said period of ten years, and an additional sum of $5 per car for each car passing over said siding in excess of 240 cars per year, and the additional payments should be due at the end of each month after the number of 240 cars had been exceeded, and.

*Sixth.* That the grantee should cause all cars delivered to it over said siding to be handled and taken off said siding with speed, so as not to unduly interfere with the grantor's use of said siding.

The grant further provided that the grantee should, at its own expense, lower the grade of the present siding and reconstruct the said siding at its own expense and in a good and workmanlike manner, and that if these conditions were complied with to the entire satisfaction of the grantor it would extend the said easement for a further period of ten years.

That grant was signed by this defendant, but was not signed by the plaintiff.

The court further found that the defendant had full knowledge of the purpose of the plaintiff to purchase and construct this building, in reliance upon its right to the use of said siding, and, in reliance thereof, the plaintiff paid $170,000

for the purchase of the premises, and erected a building at the cost of about $500,000.

The sixth finding of fact is as follows: " That defendant well knew the plaintiff would not have purchased the property aforesaid and would not have proceeded with the construction aforesaid without the said easement and right of way, and that plaintiff's said purchase was made by it in reliance upon said agreement marked 'A' and the good faith of the defendant in entering into the same."

The court further found that the plaintiff, in good faith, proceeded to obtain the consents of the railroad company and the municipal authorities for the erection of said siding and the crossing of Walnut avenue, and the signing of the consent of the railroad company, and that upon the 30th day of December 1919, the board of estimate and apportionment gave consent to the construction of said siding across Walnut avenue, which consent was approved by the mayor upon January twelfth. That consent, however, was conditioned upon an acceptance by the plaintiff which was to be drawn by the corporation counsel, which was drawn and executed upon February 18, 1920. That resolution further provided that this consent was conditional upon permits to be obtained from the president of the borough of The Bronx, and the commissioner of water supply, gas and electricity, and that these permits were obtained upon March 9, 1920, and, further: " That the delay, if delay it was, in issuing the aforesaid permits to do the work of construction was not due to any act, fault or neglect on the part of the plaintiff, but was caused wholly and solely by the various departments and bureaus of the City of New York having jurisdiction in the matter. That the plaintiff exercised due diligence and did everything that could be done to secure speedy action on the part of the said City Departments and Bureaus to the end that the aforesaid permits might be issued in time to enable plaintiff to construct said extension of the railroad siding within the said time, but plaintiff was unable to expedite the action of the City Departments and Bureaus and the issuance of the said permits."

It is further found that said siding was a necessary adjunct to the plaintiff's business. The work was not, in fact, attempted to be commenced by the plaintiff until March 24,

1920, and it was found that the delay from March 10, 1920, to March 24, 1920, did not in any manner affect or change the position of the defendant, and that the plaintiff had no adequate remedy at law. Plaintiff had sought an extension of time on March sixth which was refused. As a conclusion of law it was held, however, that time was of the essence of the contract, and, although the plaintiff had expended over $670,000 in reliance upon this contract and had secured the necessary franchises and permits and the plaintiff cannot be restored to its original position, nevertheless, that the plaintiff is without remedy by reason of its failure to construct and complete this siding across Walnut avenue on or before March 10, 1920, at which time the six months provided for in the contract expired.

It appears that upon March 6, 1920, the plaintiff not having then, although in the exercise of due diligence, obtained the necessary permits, made application to the defendant for an extension of time of three months. This the defendant refused to grant, unless the plaintiff would consent to a modification of the agreement, so as to provide that in case of sale of the premises by the defendant, the grantee thereof should have the option to sell free from the easement created by the agreement as drawn. This the plaintiff refused to do. This action was thereupon brought to enjoin the defendant from interfering with the plaintiff in the construction of this siding and making the connection with the plaintiff's premises. Temporary injunction has been granted, and the construction has now been completed.

The trial court erred, I think, in holding that time was of the essence of the contract. No proof is made or attempted to be made that the delay in construction beyond the six months prejudiced defendant. This time limit was apparently to fix a date when the rent would commence. Upon April fifth the plaintiff tendered to the defendant a month's rent. That is claimed to be an improper tender, because it was not made on the first of the month. But no tender was necessary, because of the positive refusal of the defendant to proceed with the contract and allow the plaintiff to enter its land and complete the construction provided for in the contract. As long, therefore, as the six months' limitation was simply for the

purpose of fixing the time when the rent should begin, the court should hold that time was not of the essence of the contract, but that the construction might be delayed if necessary beyond the six months without a forfeiture of the plaintiff's rights under the contract.

The findings of the court that the delay was caused without fault of the plaintiff and in the exercise of due diligence by the plaintiff to obtain the necessary permits, would seem to give the plaintiff the right to enforce this contract and enjoin the defendant from interfering with the construction provided therein, unless there be some other principle of law which would forfeit the rights of the plaintiff under the contract. The respondent upon this appeal urges, however, that this plaintiff is not entitled to a judgment, because such a judgment is in the nature of a judgment for specific performance which will not be granted unless the obligations in the contract are mutual. This was not the objection referred to by the Special Term, but, nevertheless, presents, as I view it, the only real question in the case. But the refusal of courts of equity to decree specific performance for lack of mutuality is based upon equitable maxims and subject to equitable conditions. The general rule is that it does not refer to contracts which have been fully performed. (25 R. C. L. § 36.) In that section it is said full performance on the part of plaintiff is not in all cases necessary, for if he has performed the valuable part of an agreement and is in no default as to the residue, the court may direct the specific execution of the other part of the contract. (See *Wynn v. Garland,* 19 Ark. 23.)

In *Tidewater Ry. Co.* v. *Hurt* (109 Va. 204; 63 S. E. Rep. 421) is found a case which is in many ways parallel with the case at bar. It was there held: "A contract to convey land to a railroad company for a right of way, is not lacking in mutuality because it contains an introductory recital that, ' Whereas (the railroad company) proposes to build a line of railway,' etc., where it is obvious that the recital is not a covenant to build a railroad, which covenant could not be specifically enforced, but only a representation as an inducement to the contract, the truth or falsity of which would influence the court in granting or refusing specific performance." It is further held in that case: "A party is entitled

to specific performance of a contract to convey land which has been so far performed by him that failure to carry it out would operate as a fraud upon his rights."

Under this contract the plaintiff was required to obtain all necessary permits and authorizations for the extension of the siding and to indemnify the grantor for all loss or damage by reason of any act on its part. It has worked assiduously and diligently and has obtained these permits, and, moreover, has expended over $670,000 in the purchase of the land and in the erection of buildings thereon, which moneys were expended with the knowledge of this defendant upon the faith of the rights given under this easement. This has been so found by the trial court. To this state of facts then is particularly applicable the opinion in the *Tidewater Railway Company* case cited, where it is said: " There is still another view of the case in which the appellant is entitled to prevail. The amended bill alleges part performance of the contract by the appellant, under circumstances which affect the conscience of the appellee; and his failure to carry out the contract would operate a fraud upon appellant's rights." (Citing *Lester* v. *Lester*, 28 Gratt. 737; *Stokes* v. *Oliver*, 76 Va. 72, 82.)

The plaintiff then having partly performed its part of the agreement and having expended this large amount of money upon the faith of the defendant's obligations hereunder, it would be a distinct fraud upon the plaintiff to refuse to allow the plaintiff the benefit of the easement which the contract purports to give and to refuse to the plaintiff the injunction of the court against the defendant from interfering with the plaintiff's right to avail itself of the easement thus given.

The judgment should, therefore, be reversed, with costs, and the plaintiff have judgment for the relief asked for in the complaint, with costs.

Clarke, P. J., Dowling, Page and Greenbaum, JJ., concur.

Judgment reversed, with costs, and judgment directed for plaintiff as demanded in complaint, with costs. Settle order on notice.